# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NATHANIEL PAYTON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-1413** |
| **S.W. SANDY MCCINE** | **SECTION "A"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.  FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Nathaniel Payton, is incarcerated in the Raymond Laborde Correctional Center in Cottonport, Louisiana.[2] On May 28, 2009, Payton was indicted by an Orleans Parish grand jury and charged with second degree murder.[3] The Louisiana Fourth Circuit Court of Appeal summarized the facts determined at trial in relevant part as follows:

> The defendant was convicted of manslaughter in the killing of Cyril Roussel, who allegedly was shot by the defendant on August 2, 2008, and as a result of the wounds inflicted, died approximately six months later, on February 9, 2009.
> [. . .]
> New Orleans Police Department Officer Jason M. Lewis testified that on August 2, 2008, he was assigned to the canine unit. He was driving in the French Quarter, on Iberville Street, near Club Decatur, when he heard what sounded like gunshots. At that time he also began to hear reports on the police radio of the shooting outside Club Decatur. He was proceeding up Iberville Street to N. Peters Street when he was flagged down by a security guard from the club, who pointed the defendant out to him. The defendant was walking very fast. Officer Lewis turned on his lights and siren to get through heavy vehicular traffic at N. Peters Street, at which point the defendant began to run.
> Officer Lewis crossed N. Peters on Iberville Street, paralleling the defendant as he ran across two connected parking lots. When the officer observed the defendant reach into his waistband and pull out a firearm, he stopped his vehicle, got his canine out, and ran into the parking lot after defendant. The officer ran through the gate across from the hotel entrance, and his canine apprehended Nicholas (sic) Payton. Officer Lewis testified that Payton dropped or threw the gun he was carrying, a Ruger semi-automatic handgun, and it landed in the middle of N. Front Street. Officer Lewis testified that from the time he saw the defendant walking fast until the time his canine apprehended defendant, he lost sight of him for only a brief second when he ran behind a building in the

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 3 of 8, Indictment, 5/28/09; Grand Jury Return, 5/28/09.

2

middle of the parking lots and emerged on the other side, still running parallel to the officer.

[. . .]

Leo Crump testified that he knew the victim, Cyril Roussel, from meeting him and his wife at parties in connection with the local music industry. On the night of August 2, 2008, Crump attended two concerts with friends at the House of Blues on Decatur Street. After the first concert, he went to Club Decatur to get a slice of pizza and ran into Cyril Roussel. Roussel had attended the second show at the House of Blues, though not with Crump. After the second show Crump saw Roussel standing with other people across Decatur Street talking. Crump went into Club Decatur.

Cyril Roussel subsequently entered, saying to someone Crump did not see: "I'm going to be right f.....g here, you know. I ain't going nowhere." Crump described the words from the victim as words of arguing. Crump said he asked Roussel at that point, "Hey man, what's wrong?" Roussel responded that nothing was wrong, and Crump said "[C]ool out. We having a good time tonight."

Crump and Roussel continued talking, with Crump's back to the outer wall of Club Decatur, and Roussel facing Decatur Street. Someone appeared crouched down behind Roussel as they talked, and Crump heard a click. As soon as he heard a second click gunshots rang out. When Roussel was shot he ran about ten yards and fell over into the street. Crump called 911 and went right over to Roussel. Crump said he never saw a gun, nor did he see Cyril Roussel with a weapon. On cross-examination he was asked if he knew who the individual was "that was involved in the argument," [with the victim]. He did not know. He also said he did not know who shot his friend. Crump replied in the negative when asked on redirect examination whether he had seen the shooter's face. Crump said the shooting and scattering/running of people took a matter of seconds.

Kiefer Brown testified that he was working as an armed security person at Club Decatur at the time of the shooting. He was inside when the shooting began. He looked outside and saw the victim, by that time on the ground, by some bushes, being shot more times by Nicholas (sic) Payton, whom he identified in court. The defendant's gun jammed or ran out of ammunition, and he hurried away, putting the gun in his waistband. Brown followed him up Clinton Street to Iberville Street, where he encountered two security personnel from The House of Blues. He asked one of them to call the police. He continued to follow the defendant as he walked toward N. Peters Street. He said Payton turned and saw him, and took off running across N. Peters Street. Brown saw a police SUV and directed him to where he thought the defendant was running. Brown continued to chase the defendant, and observed him remove the gun from his waistband. The defendant then came back toward Brown, because the police canine was coming toward him. Brown said he grabbed the defendant, and the gun flew up in the air and hit a nearby fence. They [the police] handcuffed defendant, and

3

> Brown pointed out the gun to police. He said that as soon as he turned the gun over to the police he ran back to Club Decatur.
>
> [. . .]

State v. Payton, 68 So.3d 594, 595-99 (La. App. 4th Cir. 2011); State Record Volume 7 of 8, Louisiana Fourth Circuit Opinion, 2010-KA-1166, pages 1-9, May 18, 2011.

Payton was tried before a jury on March 8 through 11, 2010, and found guilty of the responsive verdict of manslaughter.[4] On April 9, 2010, the state trial court denied Payton's motion for a new trial based on the non-unanimous jury verdict.[5] The state trial court also sentenced Payton to serve 40 years in prison at hard labor.[6]

On direct appeal to the Louisiana Fourth Circuit, Payton's appointed counsel asserted three errors:[7] (1) The evidence was insufficient to support the verdict of manslaughter. (2) The evidence was insufficient to support the finding that Payton was the perpetrator of the offense. (3) The jury instruction allowing a non-unanimous jury

---

[4] St. Rec. Vol. 3 of 8, Trial Minutes, 3/8/10; Trial Minutes, 3/9/10; Trial Minutes, 3/10/10; Trial Minutes, 3/11/10; Jury Verdict, 3/11/10; St. Rec. Vol. 5 of 8, Trial Transcript, 3/9/10; St. Rec. Vol. 6 of 8, Trial Transcript, 3/10/10; St. Rec. Vol. 7 of 8, Trial Transcript, 3/11/10.

[5] St. Rec. Vol. 3 of 8, Sentencing Minutes, 4/9/10; St. Rec. Vol. 7 of 8, Sentencing Transcript, p.3, 4/9/10; St. Rec. Vol. 2 of 8, Motion for New Trial, scanned 4/14/10.

[6] St. Rec. Vol. 3 of 8, Sentencing Minutes, 4/9/10; St. Rec. Vol. 7 of 8, Sentencing Transcript, p.8, 4/9/10.

[7] St. Rec. Vol. 7 of 8, Appeal Brief, 2010-KA-1166, 9/13/10.

4

verdict was unconstitutional. The Louisiana Fourth Circuit affirmed the conviction and sentence on May 18, 2011, finding the claims meritless.[8]

The Louisiana Supreme Court denied the writ application filed by Payton's counsel on February 3, 2012, without stated reasons.[9] His conviction became final ninety (90) days later on May 3, 2012, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filling for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

Payton's counsel presented for filing an application for post-conviction relief on February 1, 2013.[10] In that pleading, his counsel asserted that Payton was denied due process through the ineffective assistance of trial and appellate counsel.[11] On October

---

[8] Payton, 68 So.3d at 594; St. Rec. Vol. 7 of 8, 4th Cir. Opinion, 2010-KA-1166, 5/18/11.

[9] State v. Payton, 79 So.3d 1023 (La. 2012); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2011-KH-1296, 2/3/12; La. S. Ct. Writ Application, 11-KH-1296, 6/20/11 (postmarked 6/17/11); St. Rec. Vol. 7 of 8, La. S. Ct. Letter, 2011-K-1296, 6/20/11. Payton submitted a pro se supplemental brief asserting that manslaughter may have been a compromise verdict in light of the insufficient evidence. St. Rec. Vol. 8 of 8, Pro Se Supplemental Brief, 11-K-1296, 8/16/11.

[10] St. Rec. Vol. 3 of 8, Application for Post-Conviction Relief, stamped 2/1/13 and bearing handwritten notation, "2/01/13 served by hand on Ms. Carol @ front desk."

[11] Post-conviction counsel argued that trial counsel was ineffective when he elicited hearsay testimony, did not object to the out of court statements of the victim, called the victim's doctor to testify without having procured a defense medical expert and did not object to the trial court's adverse rulings during voir dire. He also argued that appellate counsel was ineffective when she failed to challenge the adverse rulings by the trial court during voir dire.

5, 2015, a second, similar pleading was filed by the same attorney, which included a third claim of ineffective assistance of trial counsel during sentencing allegedly resulting in imposition of an excessive sentence.[12] The record contains no ruling on either of these counsel-filed post-conviction applications.

In the meantime, on January 15, 2015, the state trial court issued a judgment denying an application for post-conviction relief purportedly filed pro se by Payton on January 31, 2013.[13] Although no such pleading appears in the record, the state trial court's judgment indicates that Payton asserted three claims: (1) He was denied his confrontation rights when he was not allowed an opportunity to confront Officer Greyberry with impeachment evidence. (2) The State presented the perjured testimony of Kiefer Brown at trial. (3) He received ineffective assistance of counsel when counsel failed to object to two biased jurors or file a motion to recuse the trial judge because of her relationship with the victim's sister. The court denied the post-conviction application, finding the claims meritless.[14]

Payton sought review of this ruling in the Louisiana Fourth Circuit, arguing that the state trial court erred in denying relief on these issues without discovery or an

---

[12]St. Rec. Vol. 3 of 8, Application for Post-Conviction Relief, 10/5/15.

[13]St. Rec. Vol. 3 of 8, Trial Court Judgment, 1/15/15.

[14]Id.

evidentiary hearing.[15] The court denied relief on June 30, 2015, because it was unable to locate a copy of the pro se "supplemental" application for post-conviction relief addressed in the trial court's order and advised Payton he could resubmit his application if the underlying pleading could be located or recreated.[16]

On July 15, 2015, Payton signed and submitted a writ application to the Louisiana Supreme Court claiming that the state trial court violated his right of access to the courts, erred in failing to rule on the post-conviction application filed by his counsel and erred by denying him relief on his supplemental post-conviction application without holding an evidentiary hearing or allowing discovery.[17] The Louisiana Supreme Court denied the writ application on September 16, 2016, noting that Payton failed to establish that he received ineffective assistance under Strickland v. Washington, 466 U.S. 668 (1984).[18] The court did not consider Payton's request for reconsideration, citing La. S. Ct. Rule IX§6, which does not allow reconsideration of a denied writ application.[19]

---

[15]St. Rec. Vol. 8 of 8, 4th Cir. Writ Application, 2015-K-0669, 6/18/15 (dated 6/8/15). Payton timely mailed a writ application to the Louisiana Fourth Circuit on February 3, 2015, and was directed to resubmit the writ application when it could not be located by the appellate court clerk.

[16]St. Rec. Vol. 8 of 8, 4th Cir. Order, 2015-K-0669, 6/30/15. The date of issuance was obtained from the records of the Louisiana Fourth Circuit Clerk of Court.

[17]St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 15-KH-1538, 8/12/15 (dated 7/15/15).

[18]State ex rel. Payton v. State, 201 So.3d 243 (La. 2016); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2015-KH-1538, 9/16/16; La. S. Ct. Writ Application, 15-KH-1538, 8/12/15 (dated 7/15/15).

[19]State ex rel. Payton v. State, 214 So.3d 865 (La. 2017); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2015-KH-1538, 1/9/17; Application for Rehearing, 15-KH-1538, 10/12/16 (dated 9/26/16).

While that matter was pending, on August 15, 2016, Payton signed and submitted to the state trial court a "Supplemental Memorandum in Support of Application for Post-Conviction Relief" in which he asserted the following arguments:[20] (1) He has newly discovered evidence that he was denied a fair trial in that the State used perjured or false testimony and tampered with the evidence and failed to correct these matters. (2) The State willfully suppressed exculpatory Brady evidence. (3) He received ineffective assistance of counsel because counsel failed to investigate the charge, the medical evidence and the crime scene and failed to retain a forensic expert. The record does not contain a ruling on this pleading.

II.     FEDERAL HABEAS PETITION

On February 10, 2017, the clerk of this court filed Payton's petition for federal habeas corpus relief in which he asserted the following grounds for relief:[21] (1) His state post-conviction application stated claims upon which relief could be granted, entitling him to discovery and an evidentiary hearing pursuant to La. Code Crim. P. arts. 928 and 930, Louisiana Const. Art. I§2, State ex rel. Tassin v. Whitley, 602 So.2d 721 (La. 1992) and Lemmon v. Connick, 590 So.2d 574 (La. 1992).[22] (2) The state trial court violated

---

[20]St. Rec. Vol. 3, Supplemental Memorandum, 9/12/16 (dated 8/15/16).

[21]Rec. Doc. No. 1, pp. 24-25.

[22]Article 928 provides that a post-conviction application may be dismissed if it fails to state a claim for which relief can be granted. Article 930 allows for an evidentiary hearing when a post-conviction application presents questions of fact which can not be summarily resolved on the pleadings. In State ex rel. Tassin, the Louisiana Supreme Court outlined state law regarding the need for discovery

8

his due process rights under the state and federal constitutions when it failed to rule on the application for post-conviction relief filed by his attorney and only ruled on the pro se supplemental application contrary to state law under the holdings in State ex rel. Tassin and Lemmon. (3) His right to access to the courts under the state and federal constitutions was abrogated by the state trial court's failure to rule on the attorney-filed application for post-conviction relief. (4) His equal protection rights under the Fourteenth Amendment were abrogated by the state trial court's unjust delay and failure to rule on the application for post-conviction relief filed by his attorney in violation of the holding in State ex rel. Tassin.

Payton argues that, had the state court allowed him the opportunity to conduct discovery and take depositions to present at a post-conviction evidentiary hearing, he would have been able to prove that he was denied due process and fair trial and received ineffective assistance of counsel when his counsel failed to challenge the selection of two jurors, Calvin J. Aguillard and Calvin J. Gavion Sr., whom he claims were related to the victim and/or his family, and failed to move for the recusal of state trial Judge Linda Van Davis, who had a close friendship with the victim's twin sister, Cherie Roussel.[23] He also

---

in post-conviction proceedings and resolved that good cause must be shown to establish that depositions or discovery would facilitate either the summary disposition or an evidentiary hearing. Id. at 723-24. The Lemmon court addressed access to and production of state court records in connection with post-conviction proceedings.

[23]Rec. Doc. No. 1, p. 30.

9

argues that discovery would have allowed him to prove that the State presented and relied upon perjured testimony, suppressed evidence, and wrongfully admitted the hearsay testimony by Officer Haynes, which previously had been ruled inadmissible.[24] Payton requests that this federal habeas court order the state trial court to allow him to conduct discovery and hold an evidentiary hearing on his claims.

The State filed a response in opposition to Payton's petition asserting that Payton's claims challenging the state court's procedural actions on post-conviction review are not cognizable under federal habeas law.[25] In the alternative, the State contends that Payton failed to exhaust state court review of his claims of perjured and hearsay testimony and related ineffective assistance of counsel, which he sought to develop in the state court. The State further asserts that the ineffective assistance of counsel claims (i.e., failure to challenge the biased jurors and file a motion to recuse the trial judge) are without merit.

In his reply to the State's opposition, Payton reiterates his contention that he was denied due process when the state trial court failed to rule on all of the post-conviction applications and denied his supplemental post-conviction applications without discovery or an evidentiary hearing contrary to Louisiana law.[26] He asserts that he would have been able to prove his entitlement to relief had the state trial court allowed him to develop the

---

[24]Rec. Doc. No. 1, p. 30, 35.

[25]Rec. Doc. No. 14.

[26]Rec. Doc. No. 15.

10

issues through discovery. He further reiterates his request that this court order the state trial court to allow discovery and conduct an evidentiary hearing before addressing his claims and those asserted by his state post-conviction counsel.

III.  GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[27] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Payton's petition, which, for reasons discussed below, is deemed filed in a federal court on January 25, 2017.[28] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state

---

[27]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk filed Payton's petition on February 10, 2017, when it was received. Payton dated his signature on the petition on January 15, 2017. This is the earliest date appearing in the record on which he could have handed his pleadings to prison officials for mailing to a federal court.

court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes that Payton's petition is timely and does not assert a state imposed procedural bar to review. However, the State contends that, to the extent Payton asserts substantive claims that the State introduced perjured and hearsay testimony, state court review of those claims has not been exhausted.

IV.     FAILURE TO EXHAUST

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Id. (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)) (emphasis added). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. O'Sullivan

v. Boerckel, 526 U.S. 838, 845 (1999); accord Duncan v. Walker, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." (emphasis added) Id. (citing Nobles, 127 F.3d at 420). It is not enough for a petitioner to raise the claims in the lower state courts, if they were not also specifically presented to the Louisiana Supreme Court. See Baldwin v. Reese, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

To exhaust review of his claims in the state courts, Payton must fairly present the same claims and legal theories he urges in this federal court to the state courts through the Louisiana Supreme Court in a procedurally proper manner. The State concedes and the record reflects that Payton exhausted state court review of his ineffective assistance of counsel claim related to the alleged biased jurors and judge. However, Payton has not exhausted review of the remainder of his federal claims.

Specifically, Payton raised his claims that the State relied on uncorrected perjured or false testimony of its witnesses,[29] tampered with evidence and withheld Brady material for the first time in his August 15, 2016, state application for post-conviction relief, which remains pending before the state trial court. It does not appear from the record that Payton has ever asserted the claim of inadmissable hearsay by Officer Haynes in the state courts before asserting it in this federal habeas court.

Payton therefore has not allowed the state courts one full opportunity to review all of his substantive claims through the Louisiana Supreme Court. His petition therefore includes both exhausted and unexhausted claims, is therefore a "mixed petition," subject to dismissal for that reason. Whitehead, 157 F.3d at 387 (citing Nobles, 127 F.3d at 420).

The Supreme Court has long required that a mixed petition like this one should be dismissed without prejudice to allow for complete exhaustion. Pliler v. Ford, 542 U.S. 225, 233 (2004) (citing Rose, 455 U.S. at 510). In Pliler, however, the Supreme Court also addressed the availability of a stay-and-abeyance in connection with "mixed petitions" for habeas relief containing both exhausted and unexhausted claims. Id., 542 U.S. at 230-31. The Pliler Court reiterated the long-standing directive that a mixed petition should be dismissed without prejudice to require exhaustion. Id. at 230. The Supreme Court recognized that a petitioner has two choices when faced with dismissal

---

[29]I note that Payton did exhaust review of a claim that the State relied on the perjured testimony of Kiefer Brown in his 2015 state post-conviction pleadings, but not as to any other State witness.

14

of a mixed petition: (1) return to the state courts to exhaust the claims in full; or (2) amend or resubmit the petition to pursue only exhausted claims in the federal district court. Id. at 230-31. **Payton is hereby instructed that this choice is now available to him**.

The Supreme Court later held that stay-and-abeyance was an extraordinary remedy not to be made readily available to a habeas petitioner. Rhines v. Weber, 544 U.S. 269, 278 (2005). The Rhines Court cautioned that a stay-and-abeyance "should be available only in limited circumstances," and is appropriate only when the district court determines that there was "good cause" for the failure to exhaust. Id. at 277 (emphasis added). Stays are improper when the unexhausted claims are "plainly meritless" or when the petitioner has engaged in "abusive litigation tactics or intentional delay." Id. at 277-78.

In this case, the record discloses no good cause for Payton's failure to exhaust these claims, and I can find none. Payton simply has not given the state courts a full opportunity to complete review of all of his claims. As long as Payton diligently pursues state court review of his claims, including those filed by his post-conviction counsel, he will continue to toll the AEDPA's statute of limitations with sufficient time to return to federal court. The record does not disclose, and Payton has failed to identify, any good reason why this court should stay his petition. Under these circumstances, he is not entitled to a stay and his petition should be dismissed without prejudice for failure to exhaust.

Having shown no good cause for his failure to exhaust or to support a stay and abeyance, this petition should be dismissed <u>without</u> prejudice to allow Payton to exhaust available state court remedies as to all of his claims.  **However**, **Payton is hereby provided with the option, within the fourteen (14) day objection period provided below, to amend his habeas petition to dismiss the unexhausted claims and present <u>only</u> the exhausted claim identified in this report**.  <u>Pliler</u>, 542 U.S. at 233 (citing <u>Rose</u>, 455 U.S. at 510); <u>Whitehead</u>, 157 F.3d at 387.

## **<u>RECOMMENDATION</u>**

For the foregoing reasons, it is **RECOMMENDED** that Payton's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v.</u>

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[30]

New Orleans, Louisiana, this __12th__ day of December, 2017.

                                                    JOSEPH C. WILKINSON, JR.
                                        UNITED STATES MAGISTRATE JUDGE

---

[30]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

17