**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

NATHANIEL PAYTON                              CIVIL ACTION

VERSUS                                        NO.  17-1413

S.W. SANDY MCCINE                             SECTION "A"(2)

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

I.    FEDERAL PROCEDURAL BACKGROUND

On February 10, 2017, the clerk of this court filed Nathaniel Payton's petition for federal habeas corpus relief in which he asserted the following grounds for relief:[2] (1) His

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 1, pp. 24-25.

state post-conviction application stated claims upon which relief could be granted entitling him to discovery and an evidentiary hearing pursuant to La. Code Crim. P. arts. 928 and 930, Louisiana Const. Art. I §2, State ex rel. Tassin v. Whitley, 602 So.2d 721 (La. 1992) and Lemmon v. Connick, 590 So.2d 574 (La. 1992).[3] (2) The state trial court violated his due process rights under the state and federal constitutions when it failed to rule on the application for post-conviction relief filed by his attorney and only ruled on the pro se supplemental application contrary to state law holdings in State ex rel. Tassin and Lemmon. (3) His right to access to the courts under the state and federal constitutions was abrogated by the state trial court's failure to rule on the attorney-filed application for post-conviction relief. (4) His equal protection rights under the Fourteenth Amendment were abrogated by the state trial court's unjust delay and failure to rule on the application for post-conviction relief filed by his attorney in violation of State ex rel. Tassin.

Payton's claims, construed broadly, include that the state trial court erred by failing to allow him to conduct discovery and take depositions to present at a post-conviction evidentiary hearing to prove that he was denied due process and a fair trial by the State and received ineffective assistance of counsel when his trial counsel failed to

---

[3]Article 928 provides that a post-conviction application may be dismissed if it fails to state a claim for which relief can be granted.  Article 930 allows for an evidentiary hearing when a post-conviction application presents questions of fact which cannot be summarily resolved on the pleadings. In State ex rel. Tassin, the Louisiana Supreme Court outlined state law regarding the need for discovery in post-conviction proceedings and held that good cause must be shown to establish that depositions or discovery would facilitate either disposition or an evidentiary hearing. Id. at 723-24. The Lemmon court addressed access to and production of state court records in connection with post-conviction proceedings.

challenge the selection of two jurors, Calvin J. Aguillard and Calvin J. Gavion Sr., whom he claims were related to the victim and/or his family and failed to move for the recusal of the state trial judge, whom Payton claims had a close friendship with the victim's twin sister.[4]  Payton also argued that with discovery and a state post-conviction hearing, he could have established that the State presented and relied upon perjured testimony, suppressed evidence and wrongfully admitted hearsay testimony by Officer Haynes, which previously had been ruled inadmissible.[5]  He, therefore, prayed that this federal habeas court order the state trial court to allow him to conduct discovery and hold an evidentiary hearing.

In its response in opposition to Payton's petition, the State asserted that Payton's claims challenging the state court's procedural actions on post-conviction review are not cognizable under federal habeas law.[6]  In the alternative, the State contended that Payton failed to exhaust state court review of his claims of perjured and hearsay testimony and the related ineffective assistance of counsel claims which he sought to develop in the state court.  The State further asserted that the ineffective assistance of counsel claims (i.e., failure to challenge the biased jurors and file a motion to recuse the trial judge) are without merit.

---

[4]Rec. Doc. No. 1, p. 30.

[5]Rec. Doc. No. 1, p. 30, 35; see also, Rec. Doc. No. 15.

[6]Rec. Doc. No. 14.

3

On December 12, 2017, I issued a report and recommendation in which I recommended that Payton's federal habeas corpus petition be dismissed without prejudice for failure to exhaust state court review of all but his claims challenging the state post-conviction proceedings and that he received ineffective assistance of counsel when counsel failed to challenge the biased jurors and seek recusal of the state trial judge.[7] Payton moved for leave to amend his federal petition to exclude the unexhausted claims and proceed only with the exhausted claims identified in my prior report and recommendation.[8] The district judge granted the motion on April 9, 2018, and referred the matter to me for consideration of the remaining exhausted issues.[9]

Based on my prior report, Payton's federal petition, the state court record and his pleadings presented to the Louisiana Supreme Court, the only claims exhausted in the state courts are Payton's claims that he was denied his due process and other constitutional rights during the post-conviction process in the state courts and that he was

---

[7]Rec. Doc. No. 16.

[8]Rec. Doc. No. 19. Although Payton's motion to amend indicated that he exhausted review of claims that he was denied his confrontation rights with respect to Officer Greyberry and the State's use of perjured testimony from Kiefer Brown, the record is neither clear that he did so and, most importantly, Payton has <u>not</u> asserted those claims in this federal petition, even under a broad construction. Instead, he asserts here that his confrontation rights were violated as to the testimony of Officer Haynes and makes only general references to the State's use of perjury but not as to any particular witness. These claims are not exhausted as discussed in my prior report.

[9]Rec. Doc. No. 22.

denied effective assistance of counsel when his trial counsel failed to challenge two biased jurors and move to recuse the state trial judge.[10]

## II.    STATE COURT FACTUAL AND PROCEDURAL BACKGROUND

Although my prior report contains a detailed recounting of the procedural history of the underlying state criminal proceedings, the relevant facts and history are repeated here for ease of reference.

Payton is incarcerated in the Raymond Laborde Correctional Center in Cottonport, Louisiana.[11]  On May 28, 2009, Payton was indicted by an Orleans Parish grand jury and charged with second degree murder.[12]  The Louisiana Fourth Circuit Court of Appeal summarized the facts determined at trial in relevant part as follows:

> The defendant was convicted of manslaughter in the killing of Cyril Roussel, who allegedly was shot by the defendant on August 2, 2008, and as a result of the wounds inflicted, died approximately six months later, on February 9, 2009.

---

[10]The Louisiana Supreme Court pleadings reflect that, as here, Payton alleged ineffective assistance of trial counsel based on the biased jurors and state trial judge and the denial of his constitutional rights during post-conviction review in the state trial court.  He did not assert any other substantive claim in the Louisiana Supreme Court.  As discussed in my first report, it is not enough for a petitioner to assert the claims in the lower state courts, if they were not also specifically presented to the Louisiana Supreme Court.  See Baldwin v. Reese, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).  Payton did not specifically assert any claim in the Louisiana Supreme Court regarding denial of his confrontation rights, the State's use of perjured testimony (as to any witness, including Kiefer Brown), or the State's manipulation or withholding of evidence.  The fact that he may have asserted the claims in the lower state courts does not equate to exhaustion when the claims were not specifically asserted in the Louisiana Supreme Court.

[11]Rec. Doc. No. 1.

[12]St. Rec. Vol. 3 of 8, Indictment, 5/28/09; Grand Jury Return, 5/28/09.

[. . .]

New Orleans Police Department Officer Jason M. Lewis testified that on August 2, 2008, he was assigned to the canine unit. He was driving in the French Quarter, on Iberville Street, near Club Decatur, when he heard what sounded like gunshots. At that time he also began to hear reports on the police radio of the shooting outside Club Decatur. He was proceeding up Iberville Street to N. Peters Street when he was flagged down by a security guard from the club, who pointed the defendant out to him. The defendant was walking very fast. Officer Lewis turned on his lights and siren to get through heavy vehicular traffic at N. Peters Street, at which point the defendant began to run.

Officer Lewis crossed N. Peters on Iberville Street, paralleling the defendant as he ran across two connected parking lots. When the officer observed the defendant reach into his waistband and pull out a firearm, he stopped his vehicle, got his canine out, and ran into the parking lot after defendant. The officer ran through the gate across from the hotel entrance, and his canine apprehended Nicholas (sic) Payton. Officer Lewis testified that Payton dropped or threw the gun he was carrying, a Ruger semi-automatic handgun, and it landed in the middle of N. Front Street. Officer Lewis testified that from the time he saw the defendant walking fast until the time his canine apprehended defendant, he lost sight of him for only a brief second when he ran behind a building in the middle of the parking lots and emerged on the other side, still running parallel to the officer.

[. . .]

Leo Crump testified that he knew the victim, Cyril Roussel, from meeting him and his wife at parties in connection with the local music industry. On the night of August 2, 2008, Crump attended two concerts with friends at the House of Blues on Decatur Street. After the first concert, he went to Club Decatur to get a slice of pizza and ran into Cyril Roussel. Roussel had attended the second show at the House of Blues, though not with Crump. After the second show Crump saw Roussel standing with other people across Decatur Street talking. Crump went into Club Decatur.

Cyril Roussel subsequently entered, saying to someone Crump did not see: "I'm going to be right f.....g here, you know. I ain't going nowhere." Crump described the words from the victim as words of arguing. Crump said he asked Roussel at that point, "Hey man, what's wrong?" Roussel responded that nothing was wrong, and Crump said "[C]ool out. We having a good time tonight."

Crump and Roussel continued talking, with Crump's back to the outer wall of Club Decatur, and Roussel facing Decatur Street. Someone appeared crouched down behind Roussel as they talked, and Crump heard a click. As soon as he heard a second click gunshots rang out. When Roussel was shot he ran about ten yards and fell over into the street. Crump called 911 and went right over to Roussel. Crump said he never saw a gun, nor did he see Cyril Roussel with a

6

weapon.  On cross-examination he was asked if he knew who the individual was "that was involved in the argument," [with the victim].  He did not know.  He also said he did not know who shot his friend.  Crump replied in the negative when asked on redirect examination whether he had seen the shooter's face.  Crump said the shooting and scattering/running of people took a matter of seconds.

Kiefer Brown testified that he was working as an armed security person at Club Decatur at the time of the shooting.  He was inside when the shooting began.  He looked outside and saw the victim, by that time on the ground, by some bushes, being shot more times by Nicholas (sic) Payton, whom he identified in court.  The defendant's gun jammed or ran out of ammunition, and he hurried away, putting the gun in his waistband.  Brown followed him up Clinton Street to Iberville Street, where he encountered two security personnel from The House of Blues.  He asked one of them to call the police.  He continued to follow the defendant as he walked toward N. Peters Street.  He said Payton turned and saw him, and took off running across N. Peters Street.  Brown saw a police SUV and directed him to where he thought the defendant was running.  Brown continued to chase the defendant, and observed him remove the gun from his waistband.  The defendant then came back toward Brown, because the police canine was coming toward him.  Brown said he grabbed the defendant, and the gun flew up in the air and hit a nearby fence.  They [the police] handcuffed defendant, and Brown pointed out the gun to police.  He said that as soon as he turned the gun over to the police he ran back to Club Decatur.

[. . .]

State v. Payton, 68 So.3d 594, 595-99 (La. App. 4th Cir. 2011); State Record Volume 7 of 8, Louisiana Fourth Circuit Opinion, 2010-KA-1166, pages 1-9, May 18, 2011.

Payton was tried before a jury on March 8 through 11, 2010, and found guilty of the responsive verdict of manslaughter.[13]  On April 9, 2010, the state trial court denied

---

[13]St. Rec. Vol. 3 of 8, Trial Minutes, 3/8/10; Trial Minutes, 3/9/10; Trial Minutes, 3/10/10; Trial Minutes, 3/11/10; Jury Verdict, 3/11/10; St. Rec. Vol. 5 of 8, Trial Transcript, 3/9/10; St. Rec. Vol. 6 of 8, Trial Transcript, 3/10/10; St. Rec. Vol. 7 of 8, Trial Transcript, 3/11/10.

Payton's motion for a new trial based on a non-unanimous jury verdict.[14]  After waiver

of legal delays, the state trial court sentenced Payton to 40 years in prison at hard labor.[15]

On direct appeal to the Louisiana Fourth Circuit, appointed counsel asserted three

errors:[16] (1) The evidence was insufficient to support the verdict of manslaughter. (2) The

evidence was insufficient to support a finding that Payton was the perpetrator of the

offense. (3) The jury instruction allowing a non-unanimous jury verdict was

unconstitutional.  The Louisiana Fourth Circuit affirmed the conviction and sentence on

May 18, 2011, finding the claims meritless.[17]

On February 3, 2012, the Louisiana Supreme Court denied the writ application

filed by Payton's counsel without stated reasons.[18]  His conviction became final ninety

(90) days later on May 3, 2012, when he did not file a writ application with the United

States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for

filling for certiorari with the United States Supreme Court is considered in the finality

---

[14]St. Rec. Vol. 3 of 8, Sentencing Minutes, 4/9/10; St. Rec. Vol. 7 of 8, Sentencing Transcript, p.3, 4/9/10; St. Rec. Vol. 2 of 8, Motion for New Trial, scanned 4/14/10.

[15]St. Rec. Vol. 3 of 8, Sentencing Minutes, 4/9/10; St. Rec. Vol. 7 of 8, Sentencing Transcript, p.8, 4/9/10.

[16]St. Rec. Vol. 7 of 8, Appeal Brief, 2010-KA-1166, 9/13/10.

[17]Payton, 68 So.3d at 594; St. Rec. Vol. 7 of 8, 4th Cir. Opinion, 2010-KA-1166, 5/18/11.

[18]State v. Payton, 79 So.3d 1023 (La. 2012); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2011-KH-1296, 2/3/12; La. S. Ct. Writ Application, 11-KH-1296, 6/20/11 (postmarked 6/17/11); St. Rec. Vol. 7 of 8, La. S. Ct. Letter, 2011-K-1296, 6/20/11.  Payton submitted a pro se supplemental brief asserting that manslaughter may have been a compromise verdict in light of the insufficient evidence.  St. Rec. Vol. 8 of 8, Pro Se Supplemental Brief, 11-K-1296, 8/16/11.

determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On February 1, 2013, Payton's counsel filed an application for post-conviction relief which asserted that Payton was denied due process through the ineffective assistance of trial and appellate counsel.[19]  Specifically, the pleading asserted that Payton's trial counsel was ineffective when he elicited hearsay testimony, did not object to the out-of-court statements of the victim, called the victim's doctor to testify without having procured a defense medical expert and did not object to the trial court's adverse rulings during voir dire.  It further asserted that his appellate counsel was ineffective when she failed to challenge the adverse rulings by the state trial court during voir dire.

On October 5, 2015, a second, similar pleading was filed by the same attorney, which included a third claim of ineffective assistance of trial counsel during sentencing allegedly resulting in imposition of an excessive sentence.[20]  The record contains no ruling on either of these counsel-filed post-conviction applications.

In the meantime, on January 15, 2015, the state trial court issued a judgment denying an application for post-conviction relief purportedly filed pro se by Payton on

---

[19]St. Rec. Vol. 3 of 8, Application for Post-Conviction Relief, stamped 2/1/13 and bearing handwritten notation, "2/01/13 served by hand on Ms. Carol @ front desk."

[20]St. Rec. Vol. 3 of 8, Application for Post-Conviction Relief, 10/5/15.

January 31, 2013.[21]  Although no such pleading appears in the record, the state trial court's judgment indicates that Payton asserted three claims: (1) He was denied his confrontation rights when he was not allowed an opportunity to confront Officer Greyberry with impeachment evidence.  (2) The State presented the perjured testimony of Kiefer Brown at trial.  (3) He received ineffective assistance of counsel when trial counsel failed to object to two biased jurors or file a motion to recuse the trial judge because of her relationship with the victim's sister.  The court denied the post-conviction application, finding the claims meritless.[22]

Payton sought review of this ruling in the Louisiana Fourth Circuit, arguing that the state trial court erred in denying relief on his post-conviction claims without allowing discovery or holding an evidentiary hearing.[23]  On June 30, 2015, the Louisiana Fourth Circuit denied relief because the record did not include the pro se "supplemental" application for post-conviction relief which was addressed in the trial court's order.[24]  The court advised Payton that he could resubmit his writ application if the underlying pleading could be located or recreated.

---

[21]St. Rec. Vol. 3 of 8, Trial Court Judgment, 1/15/15.

[22]Id.

[23]St. Rec. Vol. 8 of 8, 4th Cir. Writ Application, 2015-K-0669, 6/18/15 (dated 6/8/15).  Payton timely mailed a writ application to the Louisiana Fourth Circuit on February 3, 2015, and was directed to resubmit the writ application when it could not be located by the appellate court clerk.

[24]St. Rec. Vol. 8 of 8, 4th Cir. Order, 2015-K-0669, 6/30/15.  The date of issuance was obtained from the office of the clerk of the Louisiana Fourth Circuit.

On July 15, 2015, Payton signed and submitted a writ application to the Louisiana Supreme Court asserting that the state trial court violated his right of access to the courts, erred in failing to rule on the post-conviction application filed by his counsel and erred by denying him relief on his supplemental post-conviction application without holding an evidentiary hearing or allowing discovery which prevented him from proving his claims.[25]  He also alleged that received ineffective assistance of counsel when his trial counsel failed to challenge the two biased jurors and move to recuse the state trial judge. On September 16, 2016, the Louisiana Supreme Court denied the writ application, noting that Payton failed to establish that he received ineffective assistance under Strickland v. Washington, 466 U.S. 668 (1984).[26]  The court did not consider Payton's request for reconsideration, citing La. S. Ct. Rule IX §6, which does not allow reconsideration of a denied writ application.[27]

While that matter was pending, on August 15, 2016, Payton signed and submitted to the state trial court a "Supplemental Memorandum in Support of Application for Post-Conviction Relief" in which he asserted the following arguments:[28] (1) Newly discovered

---

[25]St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 15-KH-1538, 8/12/15 (dated 7/15/15).

[26]State ex rel. Payton v. State, 201 So.3d 243 (La. 2016); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2015-KH-1538, 9/16/16; La. S. Ct. Writ Application, 15-KH-1538, 8/12/15 (dated 7/15/15).

[27]State ex rel. Payton v. State, 214 So.3d 865 (La. 2017); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2015-KH-1538, 1/9/17; Application for Rehearing, 15-KH-1538, 10/12/16 (dated 9/26/16).

[28]St. Rec. Vol. 3 of 8, Supplemental Memorandum, 9/12/16 (dated 8/15/16).

evidence reveals that he was denied a fair trial when the State used perjured or false testimony, tampered with evidence and failed to correct these matters. (2) The State willfully suppressed exculpatory <u>Brady</u> evidence. (3) He was denied effective assistance when trial counsel failed to retain a forensic expert and investigate the charge, the medical evidence and the crime scene.  The record includes no ruling on this pleading.

III.     <u>FEDERAL HABEAS PETITION</u>

As outlined previously, the clerk of this court filed Payton's petition for federal habeas corpus relief on February 10, 2017.[29]  Payton is currently pursuing his claims that he was denied effective assistance of counsel when his trial counsel failed to challenge two biased jurors and move to recuse the state trial judge and that he was denied due process as a result of the state trial court's failure to allow discovery, conduct an evidentiary hearing and rule on several pending post-conviction pleadings.

In its response in initial opposition to Payton's federal petition, the State asserted that the ineffective assistance of counsel claims are meritless and the claims challenging the state post-conviction proceedings are not cognizable on federal habeas review.[30] Neither Payton nor the State have supplemented their arguments or the record since the matter was referred for further consideration.

---

[29]Rec. Doc. No. 1, pp. 24-25; Rec. Doc. No. 15.

[30]Rec. Doc. No. 14.

IV.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[31] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Payton's petition, which, for reasons discussed below, is deemed filed in a federal court on January 25, 2017.[32]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[31]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[32]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk filed Payton's petition on February 10, 2017, when it was received.  Payton dated his signature on the petition on January 15, 2017.  This is the earliest date appearing in the record on which he could have handed his pleadings to prison officials for mailing to a federal court.

The State concedes that Payton's petition was timely and does not assert a state imposed procedural bar to review. I will therefore review the remaining claims on the merits.

V.    STANDARDS OF A MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir. 2000)), aff'd in part,

14

rev'd in part on other grounds, 532 U.S. 782 (2001) (brackets in original); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Penry, 532 U.S. 782, 792-93 (2001) (citing Williams, 529 U.S. at 405-06, 407-08); Hill, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  White v. Woodall, 572 U.S. 415, __, 134 S. Ct. 1697, 1706-07 (2014) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011); Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"  Id. at 1706 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (citations omitted; brackets in original). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## VI.    STATE POST-CONVICTION PROCEEDINGS

Payton claims that the state trial court erred when it denied his state post-conviction applications without allowing discovery and without an evidentiary hearing in violation of La. Code Crim. P. arts. 928 and 930, Louisiana Const. Art. I §2, State ex rel. Tassin and Lemmon. Payton also contends that the state trial court violated his state and federal due process and equal protection rights, including access to the courts, when it failed to rule on the applications for post-conviction relief filed by his attorney and instead only ruled on the pro se supplemental application contrary to state law under the holdings in State ex rel. Tassin and Lemmon. Payton asserted these claims in the Louisiana Fourth Circuit and the Louisiana Supreme Court, but neither court expressly

16

addressed the issues when denying Payton's 2015 writ applications. The Louisiana Fourth Circuit denied relief because Payton failed to provide supporting documentation, and the Louisiana Supreme commented only that he did not establish ineffective assistance of counsel.

Nevertheless, Payton asserts in this court that the state trial court erred by ignoring the counsel-filed pleadings and denying his pro se applications for post-conviction relief without discovery and an evidentiary hearing, which prevented him from meeting his burden of proof. He has failed to establish his entitlement to federal habeas corpus review or relief on these issues.

Payton's contention that the state courts violated state procedural rules and law in addressing his post-conviction claims fail to present a cognizable federal claim. It is well settled that "federal habeas corpus relief does not lie for errors of state law." Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (citation omitted). Federal habeas courts will only review claims that a state court has violated a federal constitutional right. Estelle v. McGuire, 503 U.S. 62, 68 (1991). In this case, the only such violation alleged by Payton stems from the process followed during state post-conviction proceedings. However, "infirmities in State habeas proceedings do not constitute grounds for relief in federal court." (citation omitted) Rudd v. Johnson, 256 F.3d 317, 319 (5th Cir. 2001). An attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself, which is the issue to be addressed in federal habeas cases. Id. at

17

320; <u>Trevino v. Johnson</u>, 168 F.3d 173, 180 (5th Cir. 1999); <u>Lackawanna County Dist.</u>
<u>Atty. v. Coss</u>, 532 U.S. 394, 402-403 (2001) (no constitutional mandate that states
provide post-conviction review) (citing <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 557 (1987)
(no constitutional right to state post-conviction review)).

For these reasons, Payton has not presented a cognizable claim to this federal
habeas court, and he is not entitled to relief based on his four claims challenging the state
post-conviction proceedings.

VII.    <u>Effective Assistance of Counsel</u>

Payton alleges that he received ineffective assistance of counsel when his trial
counsel failed to challenge the selection of two jurors, Calvin J. Aguillard and Calvin J.
Gavion Sr., whom he claims were related to or knew the victim and/or the victim's
family, and failed to move for the recusal of the state trial judge, whom he claims had a
close friendship with the victim's twin sister.[33]

On post-conviction review, the state trial court held that Payton failed to establish
any reason for his counsel to have challenged the two jurors because examination by the
state trial court revealed that neither would be impacted by their vague and distant
knowledge of the victim's family.  In addition, the court held that Payton's claims of
judicial bias were conclusory and otherwise failed to demonstrate that the court's rulings

---

[33]Rec. Doc. No. 1, p. 30.

were biased or affected by the judge's relationship with the victim's sister.   The Louisiana Supreme Court later summarily held that Payton failed to establish denial of effective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984).

In Strickland, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.  Id. at 687.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; accord United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) (citing Strickland, 466 U.S. at 694).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  Id. at 892-93.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  But it is not enough, under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'"  Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); see Harrington, 562 U.S. at 112 (Strickland requires a "substantial" likelihood of a different result, not just a "conceivable" one.)

19

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Id. at 105 (quoting Strickland, 466 U.S. at 690). The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Id. (citations omitted).

Thus, scrutiny of counsel's performance under Section 2254(d) is "'doubly deferential.'" Cullen v. Pinholster, 563 U.S. 170, 190 (2011) (quoting Knowles, 556 U.S. at 123). This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner. Id.; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999). In assessing

20

counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997); Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010). Thus, under the AEDPA, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court precedent.

## A.    Challenge to Jurors

Payton has not demonstrated that his counsel was ineffective for failing to challenge jurors Aguillard and Gavion who had knowledge of a relationship with the victim or his family. Before trial, the state trial court held a conference in chambers with all counsel and Payton present.[34] The court had been advised that the victim's uncle

---

[34]St. Rec. Vol. 5 of 8, Trial Transcript, p. 5, 3/9/10.

would be present in the courtroom and there was a question whether juror Aguillard may have known the uncle while working for the City of New Orleans.[35]  Aguillard recalled the victim's uncle by name and that he worked for the New Orleans Housing Department years ago.[36]  Aguillard twice indicated that his contact with the uncle was work related with no social aspect, and it would not impact his ability to be fair.[37]

At trial, during questioning of the first state witness, the State published numerous photographs to the jury.[38]  Juror Gavion apparently asked to speak with the court and another conference was held in chambers with all parties present.  Gavion advised the court that, although he did not recognize the name, he recognized the victim's father.[39] He recalled that his brother may have gone to school with the victim's father and his sister may have known him as well.[40]  He too repeatedly indicated that he could be fair and impartial throughout the trial, but felt he should let the court know that he recognized the victim's father, whom he had not seen in many years.[41]

---

[35]Id. at pp. 5-6.

[36]Id. at p. 6; St. Rec. Vol. 3 of 8, Trial Court Judgment, 1/15/15.

[37]Id. at pp. 6-7.

[38]Id. at p. 24.

[39]Id.

[40]Id.

[41]Id. at pp. 24-26.

Thus, questioning by the court established that both jurors could be fair and impartial despite their vague knowledge of the victim's family.  Considering the record and the findings made by the state courts, Payton has not established any actual or presumed bias based on the jurors' vague and aged knowledge of the victim's family. See Virgil v. Dretke, 446 F.3d 598, 610 n.52 (5th Cir. 2006) (the issue of juror bias is a question of fact for the trial court, which is owed deference under the AEDPA); see also, Montoya v. Scott, 65 F.3d 405, 419-420 (5th Cir. 1995) (recognizing allegation juror was acquainted with victim does not alone establish bias sufficient to disqualify juror); Riggins v. Butler, 705 F. Supp. 1205, 1209-10 (E.D. La. 1989) (declining to presume bias simply because seated juror was a former police officer).

Payton has shown no basis for any court to find that Aguillard or Gavion were biased against him or otherwise unqualified to sit on the jury.  Without some basis to have objected to or move to strike the jurors, counsel did not act deficiently or prejudicially in allowing them to remain on the jury.  Counsel is not ineffective for failing to assert a meritless objection or challenge a qualified juror.  See Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections.").

Furthermore, an attorney's decision whether to request removal of a juror is generally a matter of trial strategy. See Ray v. Johnson, 196 F.3d 1257, at *1 (5th Cir. 1999); Romero v. Lynaugh, 884 F.2d 871, 878 (5th Cir. 1989); Wash v. Hood, No. 07CV46, 2007 WL 3047149 (N.D. Miss. Oct. 17, 2007) (citing Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995)). Counsel's decision in this regard is entitled to a strong presumption of reasonableness. Moore, 194 F.3d at 591 (recognizing a strong presumption that strategic or tactical decisions made after adequate investigation fall within the wide range of objectively reasonable professional assistance). This record establishes that counsel acted reasonably - - not constitutionally ineffectively - - concerning these jurors.

For these reasons, denial of relief on this issue was not contrary to or an unreasonable application of Strickland. Payton is not entitled to federal habeas relief on this claim.

B.    Recusal of the State Trial Judge

Payton also asserts that his trial counsel was ineffective when he failed to seek recusal of the state trial judge because of her relationship with the victim's twin sister. Payton claims that in an un-transcribed hearing on March 31, 2010, the state trial judge reminded the attorneys that she had told them she went to high school and kept in touch with the victim's sister and that they could file a motion to recuse, which his counsel did not do. On this issue, the state courts' denial of relief was based on Payton's conclusory

allegations and failure to point to any unfair or impartial ruling by the state trial judge which would have demonstrated prejudice from the failure of counsel to move for recusal.

The record confirms that Payton presented no reason for a recusal and neither federal nor Louisiana law required his counsel to move to recuse the state trial judge. "[T]he floor established by the Due Process Clause clearly requires 'a fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." (citations omitted) <u>Bracy v. Gramley</u>, 520 U.S. 899, 904-05 (1997); <u>Buntion v. Quarterman</u>, 524 F.3d 664, 672 (5th Cir. 2008); <u>Samuel v. Warden, Avoyelles Correctional Center</u>, 51 F. App'x 483, 2002 WL 31319336, at *1 (5th Cir. Sept. 30, 2002).  Both federal and Louisiana law presume that trial judges act fairly and  impartially, and the burden is on the defendant to prove otherwise.  <u>See</u> <u>Bigby v. Dretke</u>, 402 F.3d 551, 558 (5th Cir. 2005) (citing <u>Bracy</u>, 520 U.S. at 909); <u>State v. White</u>, 968 So.2d 901 (La. App. 2d Cir. 2007); <u>State v. Dooley</u>, 882 So.2d 731 (La. App. 2d Cir. 2004), <u>writ denied</u>, 896 So.2d 30 (La. 2005).  When recusal is requested, Louisiana law places the burden on the movant to make affirmative allegations of fact to support recusal.  <u>State v. Williams</u>, 601 So.2d 1374, 1375 (La. 1992).  La. Code Crim. P. art 671 provides the following pertinent grounds on which a trial judge shall be recused:

A.  In a criminal case a judge of any court, trial or appellate, shall be recused when he:

(1)    Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;

[. . .]

(6)    Would be unable, for any other reason, to conduct a fair and impartial trial.

Payton has identified no particular instances in his trial record that would indicate bias, prejudice or partiality by the state trial judge.  The transcripts and orders in Payton's case disclose no comment or remark that would lead reasonable counsel to believe that the state trial judge was biased, prejudiced or partial against Payton or that the judge had any partiality towards the victim or witnesses before her.  Mere conclusory allegations of bias and prejudice do not provide a basis for recusal under Louisiana law.  See State in the Interest of M.J., 160 So.3d 1040, 1055-56 (La. App. 4th Cir. 2015) (finding allegation of bias and prejudice to be "subjective and conclusory" where the trial judge provided objective reasons for his rulings and made no statements to support a finding of actual bias or prejudice).  Payton's conclusory and subjective beliefs that the state trial judge was biased against him are unsupported by the record.

Thus, Payton has failed to establish that his counsel had reason to seek recusal of the state trial judge, that a motion to recuse would have been successful or that he was prejudiced in any way.  Counsel does not act deficiently in failing to file a meritless motion.  See Smith, 907 F.2d at 585 n.6; Koch, 907 F.2d at 530.  In the absence of the required showing, he has not demonstrated that the state courts' denial of relief was

26

contrary to or an unreasonable application of Supreme Court law.  Payton is not entitled to federal habeas relief on this claim.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Payton's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[42]

New Orleans, Louisiana, this _____10th_____ day of August, 2018.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[42]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

27